UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

KATHERINE WANDEL, Individually and on
Behalf of All Others Similarly Situated,

                        Plaintiff,

     vs.

JING GAO, DEREK BOYANG SHEN, YAN
CUI, WENBIAO LI, ERHAI LIU, XIAN CHEN,
WILLIAM WANG, GANG JI, EDWIN FUNG,
JIANPING YE, JASON ZHENG ZHANG,
CITIGROUP GLOBAL MARKETS INC.,
CREDIT SUISSE SECURITIES (USA) LLC, J.P.
MORGAN SECURITIES LLC, TIGER
BROKERS (NZ) LIMITED, US TIGER
SECURITIES, INC., COGENCY GLOBAL INC.,
RICHARD ARTHUR and PHOENIX TREE
HOLDINGS LIMITED,

                        Defendants.

---------------------------------------------------------x

Civil Action No.

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATIONS
OF THE SECURITIES ACT OF 1933

<u>JURY TRIAL DEMANDED</u>

Plaintiff Katherine Wandel ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by counsel, which included, among other things, a review of public Securities and Exchange Commission ("SEC") filings of Phoenix Tree Holdings Limited ("Phoenix" or the "Company"), press releases, analyst and media reports, and other public reports and information about the Company. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of American Depositary Shares of Phoenix ("ADS") pursuant and/or traceable to prospectuses and registration statements, as amended (together, "Offering Materials"), issued in connection with the Company's January 22, 2020 initial public offering ("IPO"), seeking to pursue remedies under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act") against Phoenix, certain of its officers and directors ("Individual Defendants"), the IPO underwriters ("Underwriter Defendants"), and others (detailed below, but referred to collectively with the other defendants as "Defendants").

2.      Phoenix is a Cayman Islands holding company that leases and manages apartments in China, which it rents to tenants under the Danke Apartment and Dream Apartment brands. This case seeks to hold Defendants accountable in strict liability and negligence for preparing the defective Offering Materials in connection with the IPO. As detailed herein, the Offering Materials omitted or otherwise misrepresented the nature and level of renter complaints the Company had received before and as of the IPO, as well as demand in the Chinese residential rental market, and the Company's exposure to significant adverse developments, resulting from the onset of the coronavirus in China – particularly in Wuhan – at the time of the IPO.

3.      At the time of the IPO, Phoenix generated revenue primarily from rents and service fees.  As of September 30, 2019, it operated in 13 cities in China, including Wuhan, where a portion of its 5,000-plus employees worked.  Unbeknownst to ADS purchasers, however, Phoenix was uniquely exposed to fallout from the worsening coronavirus pandemic, especially in Wuhan.  And the Company faced serious complaints from renters as of the IPO, both due to the coronavirus and even before its onset, which implicated the Company's reputation and threatened to adversely affect its business.

4.      The Offering Materials did not disclose these critical facts.  Yet after the IPO, reports emerged indicating that Phoenix was experiencing ongoing problems due to the coronavirus, which was causing financial and other harm to tenants.  On March 25, 2020, when Phoenix announced its unaudited financial results for the fourth quarter and fiscal year ended December 31, 2019, it told investors that it expected the coronavirus to adversely affect its financial performance for the nearly completed first quarter of 2020.  Information regarding ongoing renter complaints also reached the market after the IPO, adversely affecting the Company.

5.      Accordingly, the Offering Materials omitted and misrepresented material information, which misled Plaintiff and other members of the proposed Class (defined below) about the current and future prospects of the Company and the risks associated with purchasing the ADS.  As a result, Plaintiff and other Class members bought the ADS without knowledge of material facts regarding Phoenix and were damaged thereby.  This action seeks to recover damages for these purchasers.

## JURISDICTION AND VENUE

6.      The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the 1933 Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

8.      Venue is proper in this District pursuant to Section 22 of the 1933 Act and 28 U.S.C. §1391(b) and (c).  Among other things:

(a)      Defendants conducted the IPO in this District, drafted the Offering Materials in part in this District, disseminated the misleading statements at issue in this District, and solicited ADS purchasers here.  The Company, presumably at the direction or with the consent of its directors, also engaged the services of U.S.-based professionals for the IPO.  These professionals included the law firm of Simpson Thacher & Bartlett LLP, which advised the Company on matters involving the U.S. federal securities laws and New York law.

(b)      The Underwriter Defendants have substantial operations and/or conduct substantial business in this District (directly or via agents), and defendants Citigroup Global Markets Inc. ("Citigroup"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), J.P. Morgan Securities LLC ("J.P. Morgan"), and US Tiger Securities, Inc. ("Tiger Securities") are headquartered in this District and represented Phoenix and all or some of the other Defendants in carrying out the IPO in this District.  Some or all of the Underwriter Defendants engaged the law firm of Latham & Watkins LLP, which advised them on matters involving the U.S. federal securities laws and New York law.

(c)      The Underwriter Defendants delivered ADS against payment in this District; the corporate trust office of the depositary – Citibank, N.A., 388 Greenwich Street, New York, New York 10013 – at which the ADS were to be, and are, administered, is located in this District; and the ADS publicly trade on the New York Stock Exchange ("NYSE"), located in this District.

(d)      In addition, pursuant to the IPO underwriting agreement, Phoenix "legally, validly, effectively and irrevocably submitted, to the personal jurisdiction of each United States federal court and New York state court located in the Borough of Manhattan, in The City of New York, New York, U.S.A. . . . [and] validly and irrevocably waived any objection to the laying of venue of any suit, action or proceeding brought in any such court . . . ."

9.     Accordingly, the situs of this action lies within this District, Defendants' tortious acts occurred in this District and caused injury to purchasers of ADS deposited in this District, and each of Defendants and Class members would foreseeably expect any case or controversy stemming from the IPO to be adjudicated in this District.

**PARTIES**

10.     Plaintiff purchased the ADS on January 17, 2020 at the IPO price of $13.50 per share in the IPO and pursuant and/or traceable to the Offering Materials and has been damaged thereby.

11.     Defendant Phoenix is a Cayman Islands company that leases and operates properties in China and rents apartments to individuals and corporations, primarily for co-living arrangements in which the tenants, who may not have previously known each other, live together.  It conducted the IPO in New York and its ADS trade on the NYSE under the ticker symbol "DNK."  Each ADS represents ten Class A ordinary shares of Phoenix.  The Company's Class B ordinary shares, which were issued in connection with the IPO to defendant Jing Gao ("Gao"), carry 20 votes per share, as compared to one vote for each Class A ordinary share.

12.     Defendant Gao, Phoenix's co-founder, was its Chief Executive Officer and a member of its Board of Directors ("Board") as of the IPO.  He signed the Offering Materials for the IPO.

13.     Defendant Derek Boyang Shen was Phoenix's Chairman of the Board as of the IPO. He signed the Offering Materials for the IPO.

14.     Defendant Yan Cui, Phoenix's co-founder, was its President and a member of its Board as of the IPO.  He signed the Offering Materials for the IPO.

15.     Defendant Wenbiao Li was a member of the Board as of the IPO.  He signed the Offering Materials for the IPO.

16.     Defendant Erhai Liu was a member of the Board as of the IPO.  He signed the Offering Materials for the IPO.

17.     Xian Chen was a member of the Board who signed the Offering Materials.

18.     William Wang was a member of the Board who signed the Offering Materials.

19.     Defendant Gang Ji was a member of the Board as of the IPO.  He signed the Offering Materials for the IPO.

20.     Defendant Edwin Fung was a member of the Board as of the IPO.  The Offering Materials indicate that he accepted appointment as a director effective upon the SEC's declaration of effectiveness of the Offering Materials.

21.     Defendant Jianping Ye was a member of the Board as of the IPO.  The Offering Materials indicate that he accepted appointment as a director effective upon the SEC's declaration of effectiveness of the Offering Materials.

22.     Defendant Jason Zheng Zhang was Phoenix's Chief Financial Officer as of, and after, the IPO.  He signed the Offering Materials for the IPO.

23.     Defendant Cogency Global Inc. ("Cogency Global") is based in New York and was Phoenix's Authorized U.S. Representative for the IPO.  Defendant Richard Arthur ("Arthur"), Assistant Secretary of Cogency Global, signed the Offering Materials as an employee of Cogency Global.  Cogency Global is liable for the securities law violations by defendant Arthur in its capacity as his employer, based on principles of agency and *respondeat superior*, and also as a control person under the 1933 Act.

24.     The individual defendants identified above are referred to herein as the "Individual Defendants."  As directors, executive officers, controlling shareholders and/or representatives and agents of the Company, the Individual Defendants participated in the solicitation and sale of ADS to investors in the IPO for their own benefit and the benefit of Phoenix.

25.     The Underwriter Defendants are Citigroup, Credit Suisse, J.P. Morgan, Tiger Brokers (NZ) Limited ("Tiger Brokers") and Tiger Securities.  They served as underwriters of the IPO,

solicited purchasers of the ADS, and/or sold the ADS, in exchange for which they received millions of dollars in fees and commissions.  The Underwriter Defendants' failure to conduct adequate due diligence in connection with the IPO and preparation of the Offering Materials was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

26.     On October 28, 2019, Phoenix filed with the SEC a registration statement on Form F-1 for the IPO, which, after three amendments, was declared effective on January 16, 2020.  The next day, January 17, 2020, Phoenix filed the Final Prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement.  Together, these Offering Materials were used to sell 9.6 million ADS, representing 96 million Class A ordinary shares, at $13.50 per share. The Underwriter Defendants also exercised their option to purchase an additional 304,933 ADS.  As a result, the Company received total net proceeds of approximately $128.4 million, after deducting underwriting discounts and commissions.  The IPO was completed on January 22, 2020.

27.     The Offering Materials favorably portrayed Phoenix's business, emphasizing its focus on residents and customer service while cautioning, in the most general way, that complaints made by residents and market rumors could adversely affect the Company's business and operations.  For example, the Offering Materials broadly stated: "Regulatory inquiries or investigations, lawsuits and other claims in the ordinary course of our business, perceptions of conflicts of interest, complaints made by our residents and market rumors, among other things, could substantially damage our reputation, even if they are baseless or fully addressed."

28.     Additionally, the Offering Materials described, without accounting for current events, a highly competitive residential rental market as of the IPO.  As the Offering Materials represented: "The residential rental market [in China] is highly competitive, and we face competition in several

- 6 -

major aspects of our business."  Yet the Offering Materials represented that Phoenix was competing

effectively because of its data-driven and technological infrastructure and advantages, stating:

> We run Danke like a data science company. As our founders are technology veterans, technology is deeply rooted in our DNA. At the core of our technology system is our proprietary artificial intelligence decision engine, or "Danke Brain," which makes real-time and unbiased decisions based on data analytics to guide each step of our business operations and generate valuable business intelligence. Danke Brain has self-learning capability. It is able to apply what it learns in existing cities and neighborhoods to new cities and neighborhoods, and improves from each transaction and interaction. It reduces our reliance on local expertise, enables higher efficiency and facilitates rapid expansion. Danke Brain is supported by our big data platform, which continually processes and structurizes a massive amount of data with over 100 dimensions. Connecting everything together, our IT infrastructure digitizes our business operation and links all of our employees, property owners, residents and third-party service providers.

29.    As the Offering Materials further represented: "We see China's overall residential

rental market as our total addressable market and residential rental market in tier 1 and tier 2 cities as

our serviceable addressable market. We see the provision of value-added services to renters as an

incremental opportunity beyond that presented by the residential rental market."

30.    By the time of the IPO, however, Phoenix was the subject of numerous complaints

from tenants in China for engaging in questionable conduct.  For example, tenants complained about

Phoenix's practice of signing them up for bank loans without their knowledge or authorization and

using the loan proceeds to fund its operations, while tenants unwittingly repaid the loans in monthly

installments akin to rent.

31.    Additionally, the Offering Materials obliquely warned that the Company's "business

could also be adversely affected by the effects of Ebola virus disease, H1N1 flu, H7N9 flu, avian flu,

Severe Acute Respiratory Syndrome, or SARS, or other epidemics," noting that "operations could be

disrupted" if employees are suspected of having any such disease or condition and financial results

could be adversely affected if the Chinese economy is harmed by any such epidemic.  But as of the

effective date of the Offering Materials, the coronavirus was already ravaging China – particularly

Wuhan, which was widely regarded as the epicenter of the virus and a significant hub for Phoenix. And complications associated with the coronavirus were adversely affecting Phoenix's business, as tenants contracted the virus, lost employment, or otherwise experienced difficulty in honoring their leases and paying their rent.

32.     Furthermore, as the coronavirus continued to spread in China shortly after the IPO, tenants complained of Phoenix's handling of the situation, which harmed the Company's reputation and financial condition and prospects.  Because the Offering Materials did not disclose anything about the coronavirus, much less the impact it was then having or could have on the Company, ADS purchasers had no opportunity to consider how the worsening situation might impact the Company, including the Company's relationship with its renters.

33.     These issues presented known trends, uncertainties and risks that required disclosure in the Offering Materials.  Specifically, Item 5 of Part I of Form 20-F, incorporated by reference into the Offering Materials, required Phoenix to disclose its "management's assessment of factors and trends which are anticipated to have a material effect on the company's financial condition and results of operations in future periods."  The level of disclosure required thereunder was coextensive with, and substantively identical to, that required by Item 303 of SEC Regulation S-K.

34.     Moreover, Item 105 (formerly, Item 503) of Regulation S-K required disclosure in the Offering Materials of "the most significant factors that ma[d]e an investment in [Phoenix or the IPO] speculative or risky," as well as an explanation of "how the risk affect[ed] [Phoenix] or the securities being offered."  As detailed herein, the Offering Materials failed to disclose material facts necessary to apprise ADS purchasers of the true risks inherent in investing in the Company.

35.     Accordingly, the Offering Materials' representations concerning ongoing demand and competition in the residential rental market as of the IPO, Phoenix's unique position in the market to leverage technology in a competitive marketplace as of the IPO, and the generic risk of customer

complaints and market rumors, were materially incomplete and misleading because they omitted and otherwise misrepresented the following facts:

a)      That Phoenix had received customer complaints and negative press regarding questionable business conduct before the IPO, including its widespread and notorious practice of deceptively inducing renters to procure loans whose proceeds financed the Company's business and operations;

b)      That competition in the residential rental market in China had suffered at the time of the IPO as the coronavirus ravaged the very locations where Phoenix primarily operated, including Wuhan, the epicenter of the pandemic;

c)      That Phoenix's technological capabilities were unable to enable the Company to overcome the complications and erosion of business resulting from the spread of the coronavirus throughout China at the time of the IPO;

d)      That Phoenix was contending with extraordinarily adverse developments in China at the time of the IPO due to the coronavirus that presented events, risks and uncertainties that were reasonably likely to materially affect Phoenix's business, operations and financial condition, including a material increase in renter complaints and negative press and the prospect that renters could not continue to pay rent and service fees under conditions then existing as of the IPO; and

e)      That, as a result of the foregoing, Phoenix was positioned no differently than its competitors in managing the fallout from customer complaints or adverse implications stemming from the coronavirus in China.

36.      Information about renter complaints reached the market after the IPO as Phoenix's going-public transaction was publicized, and investors began to understand that the coronavirus was significantly and adversely impacting the Company's business and operations.  On March 25, 2020, Phoenix issued a press release announcing its unaudited financial results for the fourth quarter and

fiscal year ended December 31, 2019.  At that time, Phoenix cautioned investors that it expected the coronavirus to adversely affect its financial performance for the first quarter of 2020.  Information regarding these issues adversely affected the trading price of the ADS.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all persons or entities who purchased Phoenix ADS pursuant and/or traceable to the Offering Materials (the "Class").  Excluded from the Class are Defendants and their families; the officers, directors and affiliates of Defendants and members of their immediate families; the legal representatives, heirs, successors or assigns of any of the foregoing; and any entity in which any Defendant has or had a controlling interest.

38.     The members of the Class are so numerous that joinder is impracticable.  Phoenix ADS are actively traded on the NYSE and millions of shares were sold in the IPO.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are hundreds, if not thousands, of members in the Class.  Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

39.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members.  Among the common questions of law and fact are:

(a)     whether Defendants violated the 1933 Act, as alleged herein;

(b)     whether the Offering Materials misrepresented and/or omitted material information in violation of the 1933 Act; and

(c)     whether and to what extent Class members have sustained damages, as well as the proper measure of damages.

40.     Plaintiff's claims are typical of the claims of the Class, as all Class members were similarly affected by Defendants' conduct.

41.     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in securities class actions.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible and impracticable, for Class members to individually redress the wrongs alleged. There will be no difficulty in managing this action as a class action.

## COUNT I

### For Violations of Section 11 of the 1933 Act
### Against All Defendants

43.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

44.     This Count is brought under Section 11 of the 1933 Act [15 U.S.C. §77k] on behalf of the Class, against all Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 11, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

45.     The Registration Statement, which was incorporated in and formed part of the Offering Materials for the IPO, contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.

46.     Phoenix is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Materials, and the Individual Defendants each signed and/or authorized the signing of the Offering Materials or were designated as director-nominees. Further, Cogency Global employed defendant Arthur, and, therefore, is responsible for his Section 11 violations under principles of agency and *respondeat superior*.  The Underwriter Defendants marketed and underwrote the IPO and sold ADS to investors.

47.     As the issuer of the shares, Phoenix is strictly liable to Plaintiff and the Class for the Offering Materials' material misstatements and omissions.  Signatories of the Offering Materials, and possibly other Defendants, may also be strictly liable to Plaintiff and the Class for such material misstatements and omissions.

48.     None of Defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Offering Materials were complete, accurate or non-misleading.

49.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, Section 11 of the 1933 Act.

50.     Plaintiff and the Class members purchased the ADS pursuant and/or traceable to the Registration Statement, and have sustained damages as a result.  The value of the ADS has declined substantially subsequent and due to Defendants' violations.

51.     At the time of their purchases of the ADS, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.

52.     Less than one year elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action.  Less than three years has elapsed between the time the securities were offered to the public and the time Plaintiff filed this action.

### SECOND COUNT

### For Violation of Section 12(a)(2) of the 1933 Act
### Against All Defendants

53.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

54.     This Count is brought under Section 12(a)(2) of the 1933 Act [15 U.S.C. §77l(a)(2)] on behalf of the Class, against all Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 12(a)(2), and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

55.     By means of the defective Prospectus, which was incorporated in and formed part of the Offering Materials for the IPO, Defendants promoted and sold, for the benefit of themselves and their associates, ADS to Plaintiff and other members of the Class.  In the absence of their efforts to publicize the IPO and solicit ADS purchasers, the IPO could not have occurred.  Moreover, Cogency Global, which employed and directed defendant Arthur, is responsible for his Section 12(a)(2) violations under principles of agency and *respondeat superior*.

56.     Additionally, Phoenix qualifies as a statutory seller under SEC Rule 159A, which provides that an issuer is a statutory seller for the purpose of Section 12(a)(2) regardless of the form of underwriting.

57.     The Offering Materials contained untrue statements of material fact and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff and the other Class members a duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials to ensure they were truthful and accurate.  In the exercise of reasonable care, Defendants should have known of the misstatements and omissions contained in the Offering Materials.

58.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Offering Materials when purchasing the ADS.

59.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the 1933 Act.  As a direct and proximate result of these violations, Plaintiff and other members of the Class who purchased the ADS pursuant to the Offering Materials sustained substantial damages in connection with their purchases.  Accordingly, Plaintiff and the other members of the Class who hold ADS issued pursuant to the Offering Materials have the right to rescind and recover the consideration paid for their shares, and hereby tender their ADS to Defendants.  Class members who have sold their ADS seek damages to the extent permitted by law.

### THIRD COUNT

**For Violation of Section 15 of the 1933 Act
Against Phoenix, Cogency Global, the Individual Defendants,
and Tiger Brokers**

60.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

61.     This Count is brought under Section 15 of the 1933 Act [15 U.S.C. §77o] against Phoenix, Cogency Global, the Individual Defendants, and Tiger Brokers.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 15, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

62.     As detailed herein, each of the Defendants committed primary violations of the 1933 Act, or are directly responsible and primarily liable for any such violations, by committing conduct in contravention of Sections 11 and 12(a)(2) or having responsibility for such conduct.

63.     The Company controlled all of the Individual Defendants and Cogency Global, which it employed as its U.S. representative in connection with the IPO and otherwise.  Cogency Global, through defendant Arthur, executed the Offering Materials on behalf of Phoenix at its direction, and committed primary violations of the 1933 Act as a result.  Alternatively, because Arthur possessed

and exercised the authority to sign the Offering Materials and bind the Company accordingly, he had control over the Company in connection with the IPO.

64.     The Individual Defendants, other than Arthur, each were control persons of Phoenix by virtue of their positions as directors and/or senior officers of the Company.  They each had direct and/or indirect business and/or personal relationships with other directors, officers and/or major shareholders of the Company.  Alternatively, the Company controlled the Individual Defendants, given the influence and control the Company possessed and exerted over the Individual Defendants.

65.     And Tiger Brokers controlled Tiger Securities, the broker-dealer through which Tiger Brokers offered ADS for sale in the U.S. for purposes of the IPO.  Without Tiger Brokers' direction, control, and involvement in the IPO, Tiger Securities would not have offered the ADS for sale. Accordingly, Tiger Brokers controlled Tiger Securities for the purpose of this claim and is therefore responsible for Tiger Securities' violation of Sections 11 and 12(a)(2) under principles of agency and *respondeat superior*.

66.     By reason of the conduct alleged herein, these defendants violated Section 15 of the 1933 Act, and Plaintiff and the Class have suffered harm as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for judgment against Defendants as follows:

A.     Determining that this action is properly brought as a class action and certifying the Class accordingly, designating Plaintiff as Lead Plaintiff and Class representative, and appointing Robbins Geller Rudman & Dowd LLP as Lead Counsel and Class Counsel;

B.     Awarding Plaintiff and the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, together with prejudgment interest thereon;

C.      Awarding rescission or a rescissory measure of damages, to the extent available under the 1933 Act, together with prejudgment interest thereon;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

E.      Granting such other, further and/or different relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  April 24, 2020                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          JOSEPH RUSSELLO


                                          _____
                                                  */s/ Samuel H. Rudman*
                                             SAMUEL H. RUDMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          jrussello@rgrdlaw.com

                                          *Counsel for Plaintiff*

                                          JOHNSON FISTEL, LLP
                                          RALPH M. STONE
                                          1700 Broadway, 41st Floor
                                          New York, NY  10019
                                          Telephone:  212/292-5690
                                          212/292-5680 (fax)
                                          ralphs@johnsonfistel.com

                                          *Additional counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 24, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

DocuSign Envelope ID: E50FE744-F81E-4961-8328-11CEA4973D4B

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Katherine Wandel, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint with my counsel and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 1/17/2020 | 100 | $13.50 |
|  |  |  |
|  |  |  |

**Sales:**

| N/A |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of April, 2020.

*Katherine Wandel*

Katherine Wandel