UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KATHERINE WANDEL, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-03259-PAC |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| | : | **PLAINTIFFS' MEMORANDUM OF LAW** |
| vs. | : | **IN OPPOSITION TO DEFENDANT LI'S** |
| | : | **MOTION TO SET ASIDE DEFAULT** |
| JING GAO, DEREK BOYANG SHEN, YAN CUI, WENBIAO LI, ERHAI LIU, XIAN CHEN, WILLIAM WANG, GANG JI, EDWIN FUNG, JIANPING YE, JASON ZHENG ZHANG, CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, J.P. MORGAN SECURITIES LLC, TIGER BROKERS (NZ) LIMITED, US TIGER SECURITIES, INC., COGENCY GLOBAL INC., RICHARD ARTHUR, and PHOENIX TREE HOLDINGS LIMITED, | : : : : : : : : : : | |
| Defendants. | x | |

Lead Plaintiff Gerald L. Kirkpatrick and Plaintiff Katherine Wandel (together, "Plaintiffs") respectfully submit this memorandum of law, together with the Declaration of Joseph Russello dated June 18, 2021 ("Russello Decl."), in opposition to Defendant Wenbiao Li's ("Li") motion to set aside the clerk's default entered against him on May 24, 2021 [ECF Doc. 67]. For the reasons set forth below, this Court should not vacate the default.

## PRELIMINARY STATEMENT

In moving to set aside his default, Li disputes the adequacy of service and claims that he only discovered the existence of this class action weeks ago, after the Clerk entered his default. But Li's justification for vacating the default – that substituted service on him at a home in California he admits was once his – is rife with inconsistencies and raises more questions than answers, requiring denial of his motion (if not limited discovery and a hearing to assess its merits). Records indicated that Li co-owned the home, so delivery to a competent adult there constituted valid service.[1] In response, Li submitted a February 2007 Judgment of Dissolution to prove that he divorced his wife (who currently resides there), but supplied what appears to be a photograph of an incomplete "Grant Deed" from March 2011 that does not describe the subject property (and is missing an attachment that purportedly does). He also concedes that he paid the mortgage on the property until at least 2013, which could just as easily mean he maintained ties with his wife after the divorce and never vacated the home.

As for Li's argument that his default was not willful, he incredibly now maintains – in his moving brief, but not his declaration – that he "did not receive any papers related to this litigation and did not know of the litigation . . . ." [Doc. 71 at 5]. But Li was a director of a public company

---

[1] [Doc. 31]; Fed. R. Civ. P 4(e)(2)(B) ("leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"); *see Zanghi v. Ritella*, No. 19 Civ. 5830 (NRB), 2020 WL 589409 (S.D.N.Y Feb. 5, 2020); *see also Bing Qing Zhou v. Slim Grass Beauty Corp.*, No. 18CV5761ILGSJB, 2021 WL 54058 at *5 (E.D.N.Y. Jan. 6, 2021).

– defendant Phoenix Tree Holdings Limited ("Phoenix Tree") – whose securities he caused to be listed on the New York Stock Exchange in the initial public offering ("IPO") at issue in this action. Given his role as a director, it is virtually inconceivable that he did not learn of the existence of this case until after his default, when the action was filed just three months after the IPO, received significant attention in the media as one of the first COVID-19-related securities class actions, and was by then already pending for a year.

Accordingly, because service was effectuated properly and Li's assertions lack support, the Court should deny his motion to vacate the default or schedule limited discovery and a hearing to provide Plaintiffs with a reasonable opportunity to test those assertions.

## RELEVANT FACTS

On April 24, 2020, Plaintiff Katherine Wandel filed a complaint in this Court alleging violations of the Securities Act of 1933 (the "Complaint") against Phoenix Tree, certain of its officers and directors including Li, various underwriters, and others in connection with the January 22, 2020 IPO. [Doc. 1]. The Complaint alleges that Li was a director at Phoenix Tree at the time of the IPO. *Id*.

By May 20, 2020, Latham & Watkins LLP ("Latham") had entered a notice of appearance on behalf of Phoenix Tree. [Docs. 6-7, 9]. Later, Plaintiffs and the served defendants, including Phoenix Tree, stipulated and agreed to a schedule – approved by the Court on December 7, 2020 – whereby Plaintiffs would file an amended complaint and the served defendants would move to dismiss. [Doc. 27].

On January 12, 2021, Plaintiffs filed an affidavit of service indicating that Li was served with the Complaint by substituted service on December 28, 2020, at 38810 Litchfield Circle, Fremont, California 94536 (the "California Address"). [Doc. 31]. The affidavit stated that the

process server made five attempts to serve Li at the address before leaving a copy of the documents with a co-occupant adult female. *Id*. At this time, Latham was still counsel of record in the case for Phoenix Tree.

On January 15, 2021, Plaintiffs amended the Complaint. [Doc. 32]. At this time, Latham remained counsel of record in this case for Phoenix Tree. On February 10, 2020, however, Latham moved to withdraw as counsel after Phoenix Tree ceased cooperating in its representation or communicating with counsel. [Doc. 38]. On February 23, 2021, the Court granted Latham's motion. [Doc. 45].

On May 21, 2021, Plaintiffs filed a proposed clerk's certificate of default against Li for failure to appear or answer the Complaint or amended complaint [Doc. 64]. Three days later, on May 24, 2021, the Clerk entered the default. [Doc. 67].

Then, on June 4, 2021, more than a year after the case was filed and more than five months after substituted service on Li, Li filed this motion to set aside his default along with a declaration ("Li Decl.") that purported to deny being associated with the California Address. [Docs. 70-71]. Li declared, among other things, that he "recently learned that [Plaintiffs] submitted a request for entry of a Clerk's Certificate of Default," he "does not know for certain whether or not [his] name continues to be listed in property records as a co-owner of the [California Address]," and he "expect[s] to assert defenses similar to those asserted by the other defendants." Li Decl. ¶¶2, 12, 14 (internal quotations omitted). He also included with his declaration a purported "Grant Deed" which he claims granted his ex-wife full title to the California Address, but, among other problems with this document, it is incomplete and does not include the referenced attachment identifying what property was granted to his ex-wife.

In the interests of avoiding motion practice and facilitating the orderly procession of this case, Plaintiffs proposed that in exchange for consenting to vacatur of the default as to Li, Li would authorize his counsel to accept service and the parties would agree, subject to the Court's approval, to defer proceedings relating solely to Li pending the outcome of the pending motions to dismiss. Russello Decl. ¶4, Ex. A; [*see also* Docs. 56-61]. On the day this opposition was due, Li's counsel advised that Li had rejected this proposal. Russello Decl. ¶5.

**ARGUMENT**

Li concedes that this Court need not automatically set aside his default and acknowledges that three factors require consideration in determining whether he is entitled to the relief he seeks: (1) the willfulness of the default; (2) the existence of a meritorious defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be granted. *See S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). The Court should not vacate Li's default because the record shows: he was properly served at the California Address; his default was by choice and therefore willful; his defense to the defaulted claims is, at best, unclear; and awarding Li the relief he seeks would prejudice Plaintiffs because it would unduly prolong this litigation.

## I.    LI WAS PROPERLY SERVED

As an initial matter, this Court has personal jurisdiction over Li and service of process was properly effectuated. *Slim Grass Beauty*, 2021 WL 54058, at *4 (rejecting defendant's argument that "she is a citizen and permanent resident of China and should have instead been served in accordance with the Hague Convention" in part because "she failed to specifically deny the sworn statements by the process server"). Here, Plaintiffs discovered Li's affiliation with the California Address and effected substituted service there. [Doc. 31]. In response, Li speculates as to why he remains associated with the California address, positing that his ex-wife might have "forgotten" to

file the original grant deed.  Li Decl. ¶12.  Yet despite claiming to have resided in China "[f]rom September 2008 to the present," he admits that he continued to make mortgage payments on the California Address for *years* after his divorce and *years* after he claims to have executed the Grant Deed to his ex-wife.  *Id.* ¶¶8-10.

Incredibly, the purported Grant Deed on which he relies specifically directs that when it is recorded, the document and tax statement shall be sent to Li at the California Address – the address he renounces now.  Li Decl., Ex. B.  Thus, the Grant Deed – which is incomplete and does not even list the subject California Address – does nothing to disclaim or cast doubt on Li's continued association with the California Address.  *Polygram Merch., Inc. v. N.Y. Wholesale Co.*, No. 97 CIV 6489 (HB), 2000 WL 23287, at \*2 (S.D.N.Y. Jan. 13, 2000), *aff'd sub nom. Polygram Merch., Inc. v. Wu-Wear, Inc.*, 242 F.3d 367 (2d Cir. 2000) (reasoning that "[a] person can have multiple 'dwellings' or 'usual places of abode'" and that the 'permanence' a person enjoys at one residence is not lessened by the fact that he or she enjoys permanence elsewhere").

## II.    LI ACTED WILFULLY IN FAILING TO TIMELY RESPOND

Because Li received notice of this action, his failure to timely respond was willful.  He was one of Phoenix Tree's directors when this action began and was named as a defendant for his role in the IPO, including as a signatory to the IPO materials which contained the false and misleading statements and omissions at issue.  Complaint ¶15.  While Li was a director, Latham represented Phoenix Tree and undertook to defend this action on its behalf – efforts that, if successful, would undoubtedly benefit every defendant, including Li.  Meanwhile, Plaintiffs diligently worked and expended resources to locate Li and effect service.

Despite the record indicating otherwise, Li makes the incredible and unsupported assertion that he "did not know of the litigation." [Doc. 71 at 5].  But Li most certainly learned of this action

any number of ways, including: (1) serving as a director of Phoenix Tree, a public company listed on a national exchange; (2) from Latham, which Phoenix Tree's officers and directors authorized to defend this action; (3) from Phoenix Tree's management or other directors during the ordinary course of carrying out their duties; (4) from other defendants involved in the IPO, including the underwriters, or Phoenix Tree's insurers;  and (5) extensive media reports and press releases about this litigation, which is the first of its kind against a foreign company arising out of an IPO.  *See* Russello Decl., Ex. B (collecting articles).[2]

Notably, Li never denies receiving notice about this litigation from Phoenix Tree or others in his Declaration – the only sworn submission supporting his motion.  Nor does he divulge how or from whom he learned about the Certificate of Default.  Rather, he slyly asserts that he "did not receive notice of the substituted service *from the person who was served at that address*."  [Doc. 71 at 5] (emphasis added).  Li's astounding "promptness" in filing this motion makes it clear that he has tracked this litigation since Phoenix Tree was served and his failure to respond until forced was the product of willfulness.  *Am. Alliance Ins. Co., Ltd. v. Eagles Ins. Co.*, 92 F.3d 57, 60-62 (2d Cir. 1996) (recognizing courts' "refus[al] to vacate a judgment where the moving party had apparently made a strategic decision to default," but finding "an absence of willfulness" where the defendant's default in "fail[ing] to answer the complaint was due to a filing mistake").

---

[2]    Additionally, Plaintiffs' counsel issued formal notice of the commencement of this action, as the Private Securities Litigation Reform Act of 1995 required, and these and other law firms issued press releases either alerting the public to the investigation of claims directed to Phoenix Tree's IPO or about the pendency of this litigation. *See, e.g.*, *Robbins Geller Rudman & Dowd LLP Files Class Action Suit Against Phoenix Tree Holdings Limited* (Apr. 27, 2020) https://www.businesswire.com/news/home/20200427005750/en/Robbins-Geller-Rudman-Dowd-LLP-Files-Class-Action-Suit-Against-Phoenix-Tree-Holdings-Limited; Phoenix Tree (DNK) Class Action Alert: Johnson Fistel, LLP Files Class Action Suit Against Phoenix Tree Holdings Limited (Apr. 28, 2020) https://www.prnewswire.com/news-releases/phoenix-tree-dnk-class-action-alert-johnson-fistel-llp-files-class-action-suit-against-phoenix-tree-holdings-limited-301048385.html; *see also* https://www.marketbeat.com/stocks/NYSE/DNK/news/ (listing news for Phoenix Tree, including nearly 20 press releases alerting the public about this lawsuit); Russello Decl., Ex. B (last four pages).

Nevertheless, even if Li did not discover this action from Phoenix Tree, Latham, the served underwriters, or extensive media reports, actual notice is not required to satisfy due process. *Orix Fin. Servs. v. Phipps*, No. 91CV2523(RPP), 2009 WL 30263, at \*9 (S.D.N.Y. Jan. 6, 2009) (noting defendant's "averment that she never received notice" of an action against her, but reasoning that "even accepting Defendant's entirely unsupported affidavit as truth, actual receipt of notice by a party is not required to satisfy the dictates of due process"). Rather, "the relevant inquiry for due process purposes "is whether the serving party used means reasonably calculated to provide notice. *Id*. at \*10. Under the circumstances here, Plaintiffs did so.

### III. LI FAILED TO ADVANCE ANY DEFENSE, MUCH LESS MERITORIOUS DEFENSES, TO THE DEFAULTED CLAIMS

To sufficiently establish a meritorious defense, "'the defendant . . . must present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Yuan-Leung v. Orsyn Land Servs., Inc.*, 334 F.R.D. 64, 67 (S.D.N.Y. 2020) (quoting *McNulty*, 137 F.3d at 740). Here, Li has not attempted to articulate any defense, much less a meritorious one. Instead, he simply states that he would "expect to assert defenses similar to those asserted by the other defendants," and does not elaborate on what, in fact, he might say. Li Decl. ¶14.

Li was a signatory to the IPO materials who claims to have lived in China when COVID-19 was sweeping through Wuhan and the surrounding regions. As a signatory and director, he is an enumerated defendant under three subparts of Section 11 of the Securities Act of 1933. *See* 15 U.S.C. § 77k(a)(1)-(3). And with a presence in China, he would have had unique knowledge and access to information about conditions on the ground there during the IPO. These facts undermine any suggestion that he has a meritorious defense and set him apart from those defendants who have moved to dismiss. At a minimum, Plaintiffs should have the opportunity to explore the contours of Li's purported defenses.

In any event, Li's deliberate default precludes any meritorious defense he otherwise might have offered. *See Belizaire v. RAV Investigative & Sec. Servs., Ltd.* 310 F.R.D. 100, 106 (S.D.N.Y. 2015) ("[E]ven though RAV has presented evidence of facts that, if proven at trial, would constitute a defense to its liability for retaliatory discharge, this factor is outweighed by the conclusion that RAV's default was egregious and remains unexplained.").

## IV.    PLAINTIFF WILL SUFFER PREJUDICE IF LI'S DEFAULT IS VACATED

Despite established ties to the California Address and Plaintiffs' diligent (and successful) efforts to serve him there, Li urges this Court to compel Plaintiffs serve him yet again – in China, via the Hague Convention. [Doc. 71 at 5]. But requiring service abroad would considerably delay this case while unnecessarily imposing additional expense on Plaintiffs, with no guarantee service will be timely or successful. Indeed, service under the Hague Convention is notoriously unreliable. *See Elsevier, Inc. v. Siew Yee Chew,* 287 F. Supp. 3d 374, 379-80 (S.D.N.Y. 2018) (permitting alternative service); *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd*., 312 F.R.D. 329 (S.D.N.Y. 2015) (same). Service abroad is also patently unnecessary now that Li has secured U.S. counsel – which is exactly why Plaintiffs proposed a reasonable compromise. *See* Russello Decl., ¶4, Ex. A. In this situation, vacating the default as Li requests would prejudice Plaintiffs.

Nonetheless, even "[a]n absence of prejudice to the nondefaulting [sic] party would not in itself entitle the defaulting party to relief from judgment." *McNulty* at 137 F.3d at 738. Li has now had an ample opportunity to establish that service was not completed, that he was unaware of this action, that he has meritorious defenses, and that Plaintiffs would suffer no prejudice. He has failed to carry his burden on any of these issues.

**CONCLUSION**

For the foregoing reasons, this Court should deny Li's motion to set aside the default, or, at a minimum, afford Plaintiffs an opportunity to conduct limited discovery related to the service issue and Li's ties to and presence in the U.S. and China and schedule an evidentiary hearing. *See Old Republic Ins. Co. v. Pac. Fin. Sers. Of Am., Inc.*, 301 F.3d 54, 57-58 (2d Cir. 2002) (noting the necessity of an evidentiary hearing when a defendant disputes the sufficiency of service, but finding one unnecessary where the court was within its discretion in refusing to set aside the default judgment).  By contrast, if the Court decides to set aside Li's default, Plaintiffs respectfully request that it condition such relief on requiring Li's U.S. counsel to accept service.

DATED:  June 18, 2021                              Respectfully submitted,

                                                   JOHNSON FISTEL, LLP

New York, New York

                                                   */s/ Ralph M. Stone*
                                                   RALPH M. STONE

                                                   1700 Broadway, 41st Floor
                                                   New York, NY  10019
                                                   Telephone:  212/292-5690
                                                   212/292-5680 (fax)
                                                   ralphs@johnsonfistel.com

                                                   MICHAEL I. FISTEL, JR.
                                                   40 Powder Springs Street
                                                   Marietta, GA  30064
                                                   Telephone:  470/632-6000
                                                   770/200-3101 (fax)
                                                   michaelf@johnsonfistel.com

- 9 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com

*Attorneys for Plaintiff*