UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

KATHERINE WANDEL, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

     vs.

JING GAO, DEREK BOYANG SHEN, YAN
CUI, WENBIAO LI, ERHAI LIU, XIAN CHEN,
WILLIAM WANG, GANG JI, EDWIN FUNG,
JIANPING YE, JASON ZHENG ZHANG,
CITIGROUP GLOBAL MARKETS INC.,
CREDIT SUISSE SECURITIES (USA) LLC, J.P.
MORGAN SECURITIES LLC, TIGER
BROKERS (NZ) LIMITED, US TIGER
SECURITIES, INC., COGENCY GLOBAL INC.,
RICHARD ARTHUR and PHOENIX TREE
HOLDINGS LIMITED,

                 Defendants.

———————————————————— x

: Civil Action No. 1:20-cv-03259-PAC
:
:
:
: CLASS ACTION
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE COGENCY DEFENDANTS' JOINDER IN THE
UNDERWRITER DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND...............................................................................2

III. ARGUMENT.........................................................................................................3

    A.  Because Section 11 Imposes Liability on "Every Person Who Signed the Registration Statement" Without Exception, Arthur Is Properly Named as a Defendant for Signing the Offering Materials ........................................................3

    B.  Because Arthur's Signature Was a Prerequisite to Phoenix's Issuance of the Offering Materials and the IPO Could Not Have Occurred Without His Involvement, He Is a Control Person of Phoenix Under Section 15 ........................7

    C.  Because the IPO Could Not Occur Without the Cogency Defendants, Who Signed the Offering Materials and May Have Solicited Investors, They Are Statutory Sellers Under Section 12(a)(2)............................................................9

IV. CONCLUSION....................................................................................................10

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Briarwood Invs. Inc. v. Care Inv. Trust Inc.*,
   No. 07 CIV 8159 (LLS), 2009 WL 536517
   (S.D.N.Y. Mar. 4, 2009) ................................................................................................9

*Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*,
   903 F. Supp. 2d 274 (S.D.N.Y. 2012)...........................................................................7

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
   104 F. Supp. 3d 441 (S.D.N.Y. 2015)............................................................... *passim*

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017)..........................................................................................4, 9

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
   422 F. Supp. 3d 821 (S.D.N.Y. 2019).......................................................................7, 10

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983)......................................................................................................4

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ..................................................................................3, 7

*In re APAC Teleservices, Inc. Sec. Litig.*,
   No. 97 Civ. 9145(BSJ), 1999 WL 1052004
   (S.D.N.Y. Nov. 19, 1999) .............................................................................................9

*In re DVI, Inc. Sec. Litig.*,
   No. 2:03-cv-05336, 2010 WL 3522086
   (E.D. Pa. Sept. 3, 2010) ...............................................................................................4

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
   236 F. Supp. 3d 824 (S.D.N.Y. 2017)..........................................................................10

*In re Musicmaker.com Sec. Litig.*,
   No. CV00-2018 CAS(MANX), 2001 WL 34062431
   (C.D. Cal. June 4, 2001) ...............................................................................................6

*In re Parmalat Sec. Litig.*,
   594 F. Supp. 2d 444 (S.D.N.Y. 2009)...........................................................................6

*In re Philip Servs. Corp. Sec. Litig.*,
   383 F. Supp. 2d 463 (S.D.N.Y. 2004)........................................................................7, 8

**Page**

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
  No. 14-CV-3577 (JPO), 2016 WL 5339541
  (S.D.N.Y. Sept. 23, 2016) .........................................................................................................9

*In re Puda Coal Inc. Sec. Litig.*,
  30 F. Supp. 3d 261 (S.D.N.Y. 2014) .......................................................................................10

*In re Qudian Inc. Sec. Litig.*,
  No. 17-CV-9741 (JMF), 2019 WL 4735376
  (S.D.N.Y. Sept. 27, 2019) ......................................................................................................6, 9

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012) .......................................................................................4

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016) .......................................................................................4

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  282 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003) ....................................................................................5, 7

*Lewy v. SkyPeople Fruit Juice, Inc.*,
  No. 11 Civ. 2700(PKC), 2012 WL 3957916
  (S.D.N.Y. Sept. 10, 2012) .........................................................................................................6

*Oh v. Chan*,
  No. CV 07-04891 DDP, 2008 WL 11338725
  (C.D. Cal. July 9, 2008) .........................................................................................................3, 5

*SEC v. Jensen*,
  835 F.3d 1100 (9th Cir. 2016) ...............................................................................................3, 4

*Tharp v. Acacia Commc'ns, Inc.*,
  321 F. Supp. 3d 206 (D. Mass. 2018) ........................................................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77f ...........................................................................................................................................3
  §77f(a) .......................................................................................................................................3
  §77k(a) .......................................................................................................................................5
  §77k(a)(1) ...............................................................................................................................1, 4
  §77l ............................................................................................................................................9
  §77o(a) .......................................................................................................................................7

**Page**

## SECONDARY AUTHORITIES

*Federal Securities Act: Hearing on H.R. 4314 Before House Comm. on Interstate & Foreign Commerce*, 73d Cong. (1933) ......................................................................5

*Integration of Sec. Act Disclosure Sys.*,
Release No. 33-6231, 45 Fed. Reg. 63630 (Sept. 25, 1980)........................................5

*Integrated Disclosure Sys. for Foreign Private Issuers*,
Release No. 45, 46 Fed. Reg. 58511-01,
1981 WL 148481 (Dec. 2, 1981) ................................................................................5

Court-appointed Lead Plaintiff Gerald L. Kirkpatrick and named plaintiff Katherine Wandel ("Plaintiffs") respectfully submit this memorandum of law in the Cogency Defendants' joinder in the Underwriter Defendants' motion to dismiss the Amended Class Action Complaint for Violations of the Securities Act of 1933, filed January 15, 2021 ("Complaint," ECF No. 32, cited as "¶__").[1]

## I.    INTRODUCTION

The Cogency Defendants raise only two unique arguments in support of dismissal: *first*, that Arthur is not a proper defendant under Sections 11 and 15 because he signed the Offering Materials as a Cogency employee; and *second*, that no liability arises under Section 12(a)(2) for signing the Offering Materials.[2]  But Section 11 imposes liability on "every person who signed the registration statement . . . ."  15 U.S.C. §77k(a)(1).  It contains no exception, and the Cogency Defendants have cited no legal authority providing otherwise—because none exists.  This is unsurprising, given that any such exception would violate the purpose of the 1933 Act: to protect investors in the initial registration of securities.  Thus, the Cogency Defendants ask this Court to be the first to recognize an unwritten exemption in Section 11 for signatories based on the capacity in which they signed, which Congress itself did not envision.  And because Arthur could and did bind Phoenix as a signatory to the deficient Offering Materials, he was a control person of Phoenix, and Cogency—his employer— is liable for his conduct (as the Cogency Defendants tacitly admit).

---

[1]    Plaintiffs bring this action under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act") on behalf of all purchasers of American Depositary Shares ("ADS") of Phoenix Tree Holdings Limited ("Phoenix") pursuant or traceable to the prospectus and registration statement ("Offering Materials") for Phoenix's January 22, 2020 initial public offering ("IPO").  The Cogency Defendants are Cogency Global Inc. ("Cogency") and Richard Arthur ("Arthur").  The Underwriter Defendants are Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, J.P. Morgan Securities LLC, Tiger Brokers (NZ) Limited, and US Tiger Securities, Inc.  Exhibits to the May 3, 2021 Declaration of Joanna A. Diakos in support of the Cogency Defendants' joinder (ECF No. 60) are cited as "Diakos Ex." Exhibits to the July 1, 2020 Declaration of Joseph Russello in opposition to the Cogency Defendants' motion ("Russello Decl.") are cited as "Russello Ex."  Citations and internal quotation marks are omitted unless indicated.

[2]    The Cogency Defendants incorporate and adopt the Underwriter Defendants' arguments in support of dismissal, which Plaintiffs address in a separate memorandum of law in opposition that they incorporate by reference herein.

Nor can the Cogency Defendants secure dismissal of the Section 12(a)(2) claim. Despite that courts are split on whether signing a registration statement constitutes solicitation (thus qualifying a defendant as a "statutory seller"), the Cogency Defendants ignore contrary authority and allegations that they participated in disseminating the Offering Materials, were obligated to ensure the accuracy of disclosure to investors, and solicited ADS purchasers. They also disregard the fact that Plaintiffs have not yet had an opportunity to conduct discovery. The Cogency Defendants cannot prevail on this premature argument, especially when they were Phoenix's registered U.S. agent—based in New York City, no less—and thus likely solicited investors on its behalf. In this situation, their position, if accepted, would again undermine the purpose of the 1933 Act to protect investors.

## II.    FACTUAL BACKGROUND

Based in New York City, Cogency was Phoenix's authorized U.S. representative for the IPO. ¶26. The Offering Materials also identified Cogency as Phoenix's "agent for service," a description repeated in the "Our Corporate Information" section. Diakos Ex. 1 at cover, 13. Under the heading "Signature of Authorized Representative in the United States," the Offering Materials described Arthur as Cogency's Assistant Secretary and represented the following directly above his signature:

> Pursuant to the Securities Act of 1933, as amended, the undersigned, the duly authorized representative in the United States of Phoenix Tree Holdings Limited has signed this registration statement or amendment thereto in New York on January 15, 2020.

*Id*. at II-10; *see also* ¶¶26, 171 (alleging that Arthur signed the Offering Materials). Thus, Arthur—as "the undersigned"—held himself out to investors and the Securities and Exchange Commission ("SEC") as a signatory, as required by law, without qualification. This is, after all, his business, and he has signed many registration statements on behalf of foreign issuers—seemingly without any due diligence. Russello Decl., ¶¶3-4. In fact, he even did so for Luckin Coffee Inc., whose improprieties rendered much of the information in its offering materials false. *Id*.

The IPO could not have occurred without the Cogency Defendants' involvement: as a foreign private issuer, Phoenix could not publicly list its securities without an agent for service of process or a duly authorized representative in the U.S.—roles which Cogency and Arthur occupied, and which Cogency described prominently on its website.  Russello Ex. A.  By signing and thus approving the issuance of the Offering Materials, they are liable for the defects therein.  ¶¶26-27, 171-72, 180, 189. They also assisted in promoting and selling the ADSs and controlled primary violators of the federal securities laws, which also give rise to liability.  ¶¶171, 180, 189.

## III.    ARGUMENT

### A.    Because Section 11 Imposes Liability on "Every Person Who Signed the Registration Statement" Without Exception, Arthur Is Properly Named as a Defendant for Signing the Offering Materials

Section 6 of the 1933 Act governs the registration of securities in the U.S.  15 U.S.C. §77f. When a registrant is a foreign issuer, Section 6(a) requires its "'duly authorized representative in the United States' [to] sign the registration statement."  *Oh v. Chan*, No. CV 07-04891 DDP (AJWx), 2008 WL 11338725, at *2 (C.D. Cal. July 9, 2008) (quoting 15 U.S.C. §77f(a)).  It was under this provision that Arthur signed the Offering Materials.  *See* Diakos Ex. 1 at II-10 (citing the 1933 Act and stating that Arthur signed on behalf of Cogency as Phoenix's "duly authorized representative"). Signatories are "presumed" to have authorized use of their signatures in offering materials and the unauthorized use of a signature is a punishable violation of the federal securities laws:

> Signatures of all such persons when written on the said registration statements shall be presumed to have been so written by authority of the person whose signature is so affixed and the burden of proof, in the event such authority shall be denied, shall be upon the party denying the same.  The affixing of any signature without the authority of the purported signer shall constitute a violation of this subchapter.

15 U.S.C. §77f(a).

Signing a document "is not a mere formality, but rather signifies that the signer has read the document and attests to its accuracy."  *SEC v. Jensen*, 835 F.3d 1100, 1112 (9th Cir. 2016).  To hold

otherwise would render signatures "meaningless." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000). Thus, signatories are responsible for the contents of documents they sign, and the securities laws hold them accountable as "makers" of statements therein.[3] *See, e.g.*, *In re DVI, Inc. Sec. Litig.*, No. 2:03-cv-05336, 2010 WL 3522086, at *5 (E.D. Pa. Sept. 3, 2010) (attributing false statements to outside director who signed SEC filing); *see also Jensen*, 835 F.3d at 1112 ("[S]igners of documents should be held responsible for the statements in the document.").

Underscoring the important role signatories play in a registered offering, Section 11 imposes liability on "every person who signed the registration statement . . . ." 15 U.S.C. §77k(a)(1); *see also Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 578 (S.D.N.Y. 2015), *aff'd*, 873 F.3d 85 (2d Cir. 2017) (noting Section 11's "broad imposition of liability underscores the significance that inheres in placing one's name on a document filed with the SEC"). The 1933 Act "was designed to assure" disclosure "by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Unlike the antifraud provisions of the Securities Exchange Act of 1934—which cast a wide net of liability over "'*any* person'" who issues false or misleading statements, but imposes heightened pleading standards—the 1933 Act imposes liability on certain enumerated categories of defendants (including signatories) for deficient offering materials, but imposes "minimal" pleading standards. *Id*. at 382 (comparing statutes, quoting 15 U.S.C. §78j) (emphasis in original).

Given the unambiguous text of Section 11, the solitary act of signing a defective registration statement gives rise to liability. 15 U.S.C. §77k(a)(1). It is therefore not surprising that a "'duly authorized representative in the United States,' as a signatory to the registration statement, may be

---

[3]     "[C]ourts consistently hold that signatories of misleading documents 'made' the statements" therein. *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 163-64 (S.D.N.Y. 2012); *see also In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1094-96 (N.D. Cal. 2017) (attributing statements to officers/directors who signed filings); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (similar).

sued for a foreign issuer's violations of the [1933] Act"—or for its own violations, for that matter.

*See Oh*, 2008 WL 11338725, at *2 (quoting 15 U.S.C. §77k(a)).  Indeed, the SEC has long held that

signatories—including those signing as duly authorized representatives—are liable under Section 11:

> Section 6(a) of the Securities Act requires that the registration statement of a foreign private issuer be signed by the issuer, its principal executive officer, its principal accounting officer, its duly authorized representative in the United States, and the majority of its board of directors.  *These persons signing the registration statement are liable for violations of section 11 of the Securities Act.*

*Integrated Disclosure Sys. for Foreign Private Issuers*, Release No. 45, 46 Fed. Reg. 58511-01, at

58520, 1981 WL 148481 (Dec. 2, 1981) (emphasis added). The SEC has also acknowledged that

*individuals* who sign offering materials on behalf of foreign issuers are personally liable:

> Currently, the Commission generally accepts the signature of an individual who is an employee of the registrant or an affiliate, or who is the registrant's counsel or underwriter in the United States for the offering, *because the signature clearly identifies <u>an individual</u> that is connected with the offering as <u>subject to the liability</u> provisions of the Securities Act.*  By similar reasoning, the Commission generally has refused to accept the appointment of a newly formed or shell corporation in the United States as the authorized representative.[4]

*Id*. at 58521 (emphasis added).  This explains why no court has ever absolved a signatory of liability

based on the employment capacity in which he or she signed—and why the Cogency Defendants did

not (and cannot) find a single decision holding otherwise.[5]

---

[4]   In its March 21, 2016 *Guide to Public ADR Offerings in the United States*, Cleary Gottlieb Steen & Hamilton LLP observed that a foreign issuer's "duly authorized representative in the United States" is liable under Section 11. Russello Ex. B at 30-31.  The Securities Act's legislative history suggests that *personal* liability results from signing a registration statement.  *See Federal Securities Act: Hearing on H.R. 4314 Before House Comm. on Interstate & Foreign Commerce*, 73d Cong. 15 (1933) (noting registration "brings home the responsibility to the persons who are signing the [filings]" and "makes responsibility and guilt personal"); Russello Ex. C (excerpt of same).

[5]   As Judge Cote has asked rhetorically: "'just what is a signature on an SEC filed document meant to represent if it does not represent a degree of responsibility for the material contained in that document?'"  *Nomura*, 104 F. Supp. 3d at 577 (quoting *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 420 (S.D.N.Y. 2003)).  The SEC emphasized this point when it expanded signature requirements for Form 10-K, reasoning that "directors will be encouraged to devote the needed attention to reviewing the Form 10-K and to seek the involvement of other professionals to the degree necessary to give themselves sufficient comfort" and that "this added measure of discipline is vital to the disclosure objectives of the federal securities laws, and outweighs the potential impact, if any, of the signature on legal liability." *Integration of Sec. Act Disclosure Sys.*, Release No. 33-6231, 45 Fed. Reg. 63630, at 63624 (Sept. 25, 1980); *see also Nomura*, 104 F. Supp. 3d at 577 (quoting same, available at 1980 WL 20863, at *9).

To the contrary, Judge Furman recently upheld 1933 Act claims against a person who signed offering materials allegedly in her capacity as the employee of a foreign issuer's U.S. representative. *In re Qudian Inc. Sec. Litig.*, No. 17-CV-9741 (JMF), 2019 WL 4735376, at \*9 (S.D.N.Y. Sept. 27, 2019). There, the defendant—who held the title of "Senior Manager"—signed beneath an identical representation to that here, stating she, as "the undersigned," was "the duly authorized representative in the United States of Qudian Inc." Russello Ex. D. Noting the defendant's fact-based arguments "turn on issues beyond the scope of th[e] motion," Judge Furman rejected her dismissal bid largely for the reasons the plaintiffs there had given—most of which are equally applicable here. *Qudian*, 2019 WL 4735376, at \*9; *see also* Russello Ex. E at 2-4 (plaintiffs' opposition brief in *Qudian*).

In essence, the Cogency Defendants concede that *Cogency* is properly named as a defendant because Arthur signed the Offering Materials as its employee, but deny that his role as a signatory qualifies him as a defendant also.[6] Their position, *a fortiori*, would mean that a signatory is never subject to liability if he or she is employed by or affiliated with the issuer or another entity, because the issuer or entity would bear ultimate responsibility for violations of the 1933 Act. Thus, for example, an officer who signs offering materials could always escape liability merely because he or she is the issuer's employee—an absurd result Congress could not have intended when it enacted the 1933 Act to protect *investors* (not individual signatories).

---

[6]    While the Complaint's allegations that Arthur signed the Offering Material while in Cogency's employ do not undermine his personal liability (as the Cogency Defendants argue), they do establish a basis for *Cogency's* liability. As the Complaint alleges, Cogency is liable for Arthur's act of signing under principles of agency and respondeat superior. ¶¶26, 171, 180, 191; *see Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700(PKC), 2012 WL 3957916, at \*16 (S.D.N.Y. Sept. 10, 2012) ("The *respondeat superior* theory of liability remains viable in securities fraud cases . . . ."); *In re Musicmaker.com Sec. Litig.*, No. CV00-2018 CAS(MANX), 2001 WL 34062431, at \*12 (C.D. Cal. June 4, 2001) (entities which employed signatory-directors were proper defendants under Section 11); *cf. Tharp v. Acacia Commc'ns, Inc.*, 321 F. Supp. 3d 206, 219-20 (D. Mass. 2018) (finding that entities who employed director-signatories were proper defendants under Section 11, but dismissing claim on other grounds); *see also In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 449-55 (S.D.N.Y. 2009) (issue of fact at summary judgment as to vicarious liability for securities fraud violations).

Accordingly, Arthur is not entitled to the dismissal of the Section 11 claim regardless of the capacity in which he signed the Offering Materials because his signature alone is sufficient to subject him to personal liability, and the Cogency Defendants cannot demonstrate otherwise.

**B.      Because Arthur's Signature Was a Prerequisite to Phoenix's Issuance of the Offering Materials and the IPO Could Not Have Occurred Without His Involvement, He Is a Control Person of Phoenix Under Section 15**

Section 15 imposes liability on anyone who "controls" a violator of Section 11 or 12 of the 1933 Act.  15 U.S.C. §77o(a).  While "Congress deliberately left the concept of control undefined" because the issue is factual and a person may exert control in many ways, control involves the ability to cause a primary violator to act.  *Nomura*, 104 F. Supp. 3d at 574.

"Of particular importance when the putative controlling person is a natural person is whether he or she acted on the controlled entity's behalf by . . . [signing] documents issued by the entity." *Id*. at 576 (citing *Howard*, 228 F.3d at 1065-66).  Pleading that "a defendant signed an SEC filing . . . is sufficient to allege control of the authors of the filing," *WorldCom*, 294 F. Supp. 2d at 419, because it makes "sense to presume" that a signatory "has some measure of control over" the drafters.  *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004); *accord Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*, 903 F. Supp. 2d 274, 278-79 (S.D.N.Y. 2012) (similar).

A signature conveys that the signer has control of the content and dissemination of the filing, and pledges—implicitly, if not explicitly—that the information is accurate and reliable, as one court recognized in an analogous situation:

> The very fact that a director is required to sign these critical documents charges the director with power over the documents and represents to the corporation, its shareholders, and the public that the corporation's director has performed her role with sufficient diligence that she is willing and able to stand behind the information contained in those documents.

*WorldCom*, 294 F. Supp. 2d at 420; *see also Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821, 858 (S.D.N.Y. 2019) (individuals signed offering

materials). This message is even more strongly conveyed when a signature is "required by law," because "far from absolving [the signer] of responsibility for the misstatements therein," it increases the gravity of the signature for investors. *Philip*, 383 F. Supp. 2d at 485.

Here, Arthur signed the Offering Materials as required by Section 6(a)—an act that benefited Phoenix, because the IPO could not have occurred without it. That simple act also conveyed to the SEC and investors that he had performed the pre-signing diligence expected of every signatory and primary participant in the IPO, including the Underwriter Defendants. *See Nomura*, 104 F. Supp. 3d at 577. Thus, Arthur's signature was an essential step in the process of listing Phoenix's shares, and he exerted control over the Offering Materials, as well as their contents and dissemination.

Nonetheless, the Cogency Defendants invoke Arthur's role as a Cogency employee to dispute that he was a control person of *Phoenix*—admitting, in the process, that Cogency controlled *Arthur*. Yet they again fail to cite any legal authority for their position, despite Arthur's discretion and power to sign the Offering Materials. Indeed, the record is devoid of any suggestion that he lacked control over signing the Offering Materials. Rather, the Complaint alleges that Arthur controlled Phoenix by binding it to the misrepresentations in the Offering Materials as a signatory, or, alternatively, that Cogency controlled him by virtue of their employment relationship:

> Cogency Global, through defendant Arthur, executed the Offering Materials on behalf of Phoenix at its direction, and committed primary violations of the 1933 Act as a result. Alternatively, because Arthur possessed and exercised the authority to sign the Offering Materials and bind the Company [*i.e.*, Phoenix] accordingly, he had control over the Company [*i.e.*, Phoenix] in connection with the IPO.

¶189; *see also* ¶171 ("the Individual Defendants each signed and/or authorized the signing of the Offering Materials"). It does not allege, however, that Arthur was without power to control Phoenix.

Accordingly, Arthur is also not entitled to the dismissal of the Section 15 claim regardless of the capacity in which he signed the Offering Materials, because the fact that he *could* and *did* sign— and that Phoenix required his signature to effect the IPO—subjects him to control-person liability.

- 8 -

**C.    Because the IPO Could Not Occur Without the Cogency Defendants, Who Signed the Offering Materials and May Have Solicited Investors, They Are Statutory Sellers Under Section 12(a)(2)**

Section 12(a)(2) imposes liability not only on those who sell securities directly to the plaintiff with a deficient prospectus or oral communication (15 U.S.C. §77l), but also on so-called "statutory sellers" who solicit the purchase at least partially to advance their or the issuer's financial interests. *See Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 139 (2d Cir. 2017).  While the Cogency Defendants admit that liability may arise for statutory sellers, they argue that signing offering materials may never constitute solicitation.

Yet the Cogency Defendants concede that some courts have held that signing, standing alone, may suffice.  *See Briarwood Invs. Inc. v. Care Inv. Trust Inc.*, No. 07 CIV 8159 (LLS), 2009 WL 536517, at *4 (S.D.N.Y. Mar. 4, 2009) ("Numerous courts in this circuit hold that on a motion to dismiss, officers or directors of the stock issuer who signed its registration statement are deemed to have solicited the purchase of the offered stock.") (collecting cases).  As those courts have reasoned, "because the prospectus itself . . . solicits the purchase of securities, those who sign the registration statement should be deemed persons who solicited the purchase of the offered securities."[7]  *In re APAC Teleservices, Inc. Sec. Litig.*, No. 97 Civ. 9145(BSJ), 1999 WL 1052004, at *11 (S.D.N.Y. Nov. 19, 1999); *see also In re Ply Gem Holdings, Inc. Sec. Litig.*, No. 14-CV-3577 (JPO), 2016 WL 5339541, at *6 (S.D.N.Y. Sept. 23, 2016) (finding allegations sufficient where plaintiff bought in IPO and defendants occupied typical roles therein, citing *Briarwood*, 2016 WL 5339541, at *4).

---

[7]    In refusing to dismiss 1933 Act claims against the U.S. duly authorized representative involved as a defendant in *Qudian*, Judge Furman declined to decide whether she was in fact a statutory seller at the motion-to-dismiss stage— again, "substantially for the reasons stated in [the] opposition to [her] submissions." 2019 WL 4735376, at *9 (noting she had argued "that the Section 12(a)(2) claim against her should be dismissed because she was not a 'statutory seller subject to Section 12(a)(2) liability,'" but holding that this and other arguments for dismissal "turn on issues beyond the scope of this motion and thus are rejected here") (quoting defendant's submission); *see also* Russello Ex. E at 5-6 (arguing that the defendant could not escape liability at the pleading stage).

Other courts have required slightly more detail, upholding allegations that a defendant signed a registration statement and engaged in some aspect of marketing or promoting the offered securities. *See AMC*, 422 F. Supp. 3d at 857 (reasoning that individuals signed materials and marketed offering, citing a single complaint paragraph); *cf. In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 831-32 (S.D.N.Y. 2017) (underwriters solicited by preparing and disseminating offering materials); *In re Puda Coal Inc. Sec. Litig.*, 30 F. Supp. 3d 261, 272-73 (S.D.N.Y. 2014) (finding underwriter was statutory seller where it did not sell stock to plaintiff, but "prepared and disseminated" offering materials and was a "representative" of co-underwriter who actually sold shares).

The Complaint alleges that the Cogency Defendants not only signed the Offering Materials, but also that: as "representatives and agents" of Phoenix, they "participated in the solicitation and sale of ADS to investors in the IPO for their own benefit and the benefit of Phoenix" (¶27); they "promoted and sold, for the benefit of themselves and their associates, ADS to Plaintiffs and other members of the Class" (¶180); and "[i]n the absence of their efforts to publicize the IPO and solicit ADS purchasers, the IPO could not have occurred" (*id.*).

Additionally, Cogency is based in New York City, where some IPO advisors are based, most Underwriter Defendants are headquartered, the Offering Materials were prepared (at least in part), and the NYSE—the stock exchange on which Phoenix's ADSs were listed—is located. ¶¶11, 26. Arthur also signed the Offering Materials in New York, as the statement preceding his signature attests. Diakos Ex. 1 at II-10. Thus, there is a distinct probability that the Cogency Defendants participated in soliciting IPO investors in the U.S., and—contrary to their contentions— any further detail must await discovery.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court should deny the motion to dismiss in the entirety. If the Court dismisses any claim, however, Plaintiffs respectfully request leave to amend.

DATED:  July 1, 2021

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
AVITAL O. MALINA


*/s/ Joseph Russello*
JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com
amalina@rgrdlaw.com

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone:  470/632-6000
770/200-3101
michaelf@johnsonfistel.com

*Lead Counsel for Plaintiffs*

- 11 -

- 12 -

## CERTIFICATE OF SERVICE

I, Joseph Russello, certify that on July 1, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered to receive such notice.

*/s/ Joseph Russello*
JOSEPH RUSSELLO
