# EXHIBIT B

# CLEARY GOTTLIEB



**CLEARY SECURITIES AND DISCLOSURE CENTER | PRACTICE GUIDE**

# Guide to Public ADR Offerings in the United States

*March 21, 2016*



private issuer and 40% or less of the class of securities subject to the tender are owned by U.S. holders.[112] In calculating U.S. ownership for purposes of the Tier I and Tier II exemptions, the securities held by the bidder are excluded from the outstanding securities of the class (*i.e.*, such securities are excluded from both the numerator and the denominator).[113]

Repurchases of securities that do not constitute a tender offer may nonetheless give rise to concerns that those repurchases resulted in the manipulation of the price of the issuer's securities. To mitigate this risk, issuers repurchasing their securities should consider doing so pursuant to Rule 10b-18 under the 1934 Act, which provides issuers and their affiliated purchasers with a safe harbor from liability under anti-manipulation provisions of the 1934 Act (including Rule 10b-5) when they repurchase the issuer's common stock on the open market in accordance with the Rule's manner, timing, price and volume restrictions.[114]

### Books and Records

Pursuant to Section 13(b)(2) of the 1934 Act, any issuer that has registered a class of equity securities under Section 12 of that Act or otherwise has a periodic reporting obligation under the 1934 Act, and its subsidiaries (domestic or foreign), must maintain accurate books and records and an adequate system of internal controls.[115] Section 30A of the 1934 Act also prohibits any such issuer from using the mails or any means or instrumentality of interstate commerce (which includes communication between the United States and any foreign country) to make payments to foreign officials, foreign political parties or candidates for foreign political office for the purpose of corruptly influencing actions or decisions by them in order to assist the issuer in obtaining or retaining business for or with, or directing business to, any person.[116]

### Civil Liabilities under the 1933 Act and the 1934 Act

Various provisions of the 1933 Act and 1934 Act prohibit manipulation or fraud in connection with securities transactions. Under Section 11 of the 1933 Act, any person who purchases a security covered by a registration statement has a private right of action, if at the time the registration statement became effective it contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein

---

[112]  When the SEC adopted these tender offer exemptions in January 2000, it also adopted two exemptions from 1933 Act registration of securities issued to holders of securities of foreign private issuers in exchange offers, business combinations and rights offerings if, in each instance, U.S. ownership is 10% or less. For more information about the SEC rules affecting cross-border tender offers, exchange offers, business combinations and rights offerings, see Chapters 7 and 9 of U.S. Regulation of the International Securities and Derivatives Markets (11th ed. 2014), written by current and former partners of this Firm.

[113]  Instruction 2(ii) to Rule 14d-1 under the 1934 Act.

[114]  In 2003, the SEC adopted amendments to Rule 10b-18 that (i) shorten the time period in which issuers meeting minimum average daily trading volume and public float thresholds must be out of the market prior to the scheduled close of trading to qualify for the safe harbor, (ii) apply a uniform price condition, regardless of where an equity security is traded and (iii) modify the treatment of block purchases in applying the Rule's volume limitation and calculating a security's average daily trading volume. Failure to meet any of the manner, timing, price and volume conditions will disqualify the issuer's purchases from the safe harbor for that day. The SEC did not adopt a proposal that would have extended the Rule to cover issuer repurchases effected in markets outside the United States. *See* SEC Release Nos. 33-8335; 34-48766 (Nov. 10, 2003). The SEC has subsequently clarified that foreign trading volume should be disregarded when calculating the average daily trading volume of a security. *See* SEC Division of Market Regulation, "Answers to Frequently Asked Questions Concerning Rule 10b-18 ("Safe Harbor" for Issuer Repurchases)," (May 18, 2004). Form 20-F requires disclosure of all issuer repurchases of any class of equity securities registered under Section 12 of the 1934 Act, whether or not the repurchases are effected in accordance with Rule 10b-18. Disclosure is required regardless of whether the issuer has repurchased the shares themselves or ADRs that represent the underlying shares.

[115]  This requirement is separate from the requirements of the Sarbanes-Oxley Act and the rules thereunder to maintain and periodically evaluate disclosure controls and procedures and internal controls, as described in Part III.D above. The SEC has charged books and records violations to pursue a parent company for its subsidiary's actions without charging a violation of the anti-bribery provisions of Section 30A of the 1934 Act. *See, e.g.*, SEC v. Schering-Plough Corp., SEC Litigation Release No. 18740 (June 9, 2004).

[116]  Note that a foreign private issuer that makes corrupt payments without using any means or instrumentality of interstate commerce may nevertheless be found to have violated Section 13(b)(2)'s books and records requirement if, as may well be the case, it does not record those payments accurately in its financial records.

not misleading,[117] against (i) the issuer, (ii) its principal executive officer, its principal financial officer and its principal accounting officer, (iii) its duly authorized representative in the United States[118], (iv) every person who is, or who consented to be named as a person who is about to become, a director at the time the registration statement became effective, (v) every accountant, engineer, appraiser or other professional person who has with his consent been named as having prepared or certified any part of the registration statement, and (vi) every underwriter of the security. Section 11(a) provides that a person who purchases securities after an earnings statement covering a period of at least 12 months beginning after the effective date of the registration statement has been made available must prove that he acquired the securities in reliance on a materially false or misleading statement in the registration statement in order to have a right of recovery under Section 11. Accordingly, it is customary for a foreign issuer to agree in the underwriting agreement (*see* Part V.A below) to make generally available to its security holders such an earnings statement (which must include a reconciliation to U.S. GAAP, if the issuer's financial statements are presented in accordance with accounting principles used in the issuer's home country other than IFRS). The filing of a Form 20-F is one method of satisfying the requirements of this provision.[119]

Under Section 11, the issuer is absolutely liable for material deficiencies in the registration statement irrespective of good faith or the exercise of due diligence. By contrast, the standard of liability imposed upon directors, officers and underwriters under Section 11 is somewhat less stringent. With respect to the "expertized portions" of the registration statement

(any part of the registration statement purporting to be on the authority of an expert, such as financial statements to the extent certified by independent public accountants, or purporting to be a copy or an extract from a report or valuation of an expert), the officer, director or underwriter will not be liable if he can prove that he had "no reasonable ground to believe and did not believe, at the time such part of the registration statement became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or that such part of the registration statement did not fairly represent the statement of the expert or was not a fair copy or extract from the report or valuation of the expert." With respect to any non-expertized portion of the registration statement (including unaudited financial information), such a defendant must be able to prove that "he had, after reasonable investigation, reasonable ground to believe and did believe" at the time the registration statement became effective that the statements in such non-expertized portion of the registration statement were true and that there was no omission of a material fact required to be stated or necessary to make the statements not misleading.

Thus, officers, directors and underwriters must exercise "due diligence" with respect to the preparation of the registration statement. They may not avoid liability by relying solely upon counsel or some other person to prepare the registration statement. If the issuer has made provision for the indemnification of its officers and directors, these arrangements must be disclosed in the registration statement. Any indemnification by the issuer of the underwriters or their controlling persons

---

[117] Rule 430B under the 1933 Act provides that, with respect to the issuer and the underwriters, the effective date for a shelf registration statement for liability purposes in respect of a "shelf takedown" is the date a prospectus supplement filed in connection with the takedown is deemed part of the registration statement (*i.e.*, the earlier of the date on which the supplement is first used and the date and time of the first contract of sale of securities pursuant to such supplement). This new effective date triggered by the takedown does not affect the information that was contained in the registration statement at the time of any prior sale, and the rights of an investor in a prior sale (with a previous effective date) remain unaffected by subsequently filed prospectus supplements or 1934 Act reports.

[118] Section 6(a) of the 1933 Act provides that the registration statement of a foreign private issuer must be signed by a duly authorized representative of such issuer in the United States.

[119] Rule 158 under the 1933 Act.